UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANDELA BROCK,

                              Plaintiff,

            -against-

CITY OF NEW YORK; ACACIA NETWORK;
SERVICES FOR THE UNDERSERVED;
DANIEL REYES; TATIANA CAVE;
DONNELL BURT; JANE DOE MARTINE;
JANE DOE FACILITY MANAGER; JANE
DOE BAPTISTE; JANE DOE SIMMONS;
JOEL BARTON; JANE DOE KONG; JOHN
DOE VICAR; JANE DOE VASQUEZ #16930,

                              Defendants.

**ORDER OF SERVICE**

21 Civ. 3087 (PGG)

PAUL G. GARDEPHE, United States District Judge:

            Plaintiff Mandela Brock, appearing pro se, brings this action under 42 U.S.C. §

1983, in which he alleges violations of his constitutional rights by Defendants the City of New

York (the "City"); Acacia Network and its employees Daniel Reyes, Tatiana Cave, and Donnell

Burt; Services for the Underserved ("SUS") and its employees Jane Doe Martine, Jane Doe

Baptiste, Jane Doe Facility Manager, Jane Doe Simmons, and Joel Barton; and New York City

Police Department ("NYPD") officers Jane Doe Kong, John Doe Vicar, and Jane Doe Vasquez.[1]

(See Am. Cmplt. (Dkt. No. 10) at 2)

---

[1]  Acacia Network and SUS appear to be private organizations that operate homeless shelters in
New York City and offer a range of services to underserved communities.  See Services, ACACIA
NETWORK, https://acacianetwork.org/about/ (last visited Aug. 11, 2021); Homeless Services,
SERVS. FOR THE UNDERSERVED, https://sus.org/our-services/homeless/ (last visited Aug. 11,
2021).

## BACKGROUND

**A.    Facts**

On February 9, 2020, Plaintiff entered the New York City homeless shelter system as a single adult male.[2]  On November 9, 2020, Plaintiff transferred to the "PATH DHS Assessment" family shelter in the Bronx, New York, with his 13-year-old son, P.E.S.  (Id. ¶ 22)  Plaintiff alleges that, after transferring to the family shelter, he was asked to submit "residency for the previous two (2) years of tenancy for himself," even though he had already provided that information to DHS.[3]  Thereafter, he was deemed ineligible for housing, despite having been previously deemed eligible for housing as a single male.  (Id. ¶ 23)

---

[2]  Plaintiff provided a slightly different date in a November 11, 2020 letter to the New York City Department of Homeless Services ("DHS"), which states that he began "receiving services from [DHS], as a single adult male, on or about the 12th day of March 2020."  Plaintiff attaches a copy of this letter to the Amended Complaint.  (Id. at 39)

[3]  Plaintiff does not identify the person(s) who asked him to submit this information.  Plaintiff alleges that he "informed 'DHS' that he had already provided said information and that they had it in their possession" and "even sent a letter (EXHIBIT A) attesting to such."  (Id. ¶ 23)  Plaintiff attaches a copy of this letter to the Amended Complaint, dated November 11, 2020, in which he advises DHS of his places of residence for the prior two years.  (Id. at 38)  The letter also states that,

> [a]fter completing intake . . . an appointment was set up to prove [Plaintiff's] residency. . . . In said appointment letter [sic] it was requested that I prove residency for my time at [address] from November 9, 2018 to March 1, 2019. This request is preposterously unreasonable[, as is] . . . even infer[ing] that anyone would retain any type of mail from a residence from two years ago that they no longer live at nor have any contact with the owners [sic]. . . . The letter also demands that [Plaintiff] provide proof of residency at [address] from March 1, 2019 to February 8, 2020 and March 12, 2020 to May 19, 2020.  This demand is equally arbitrary and restrictive for it is unreasonable to think that [Plaintiff], who told interviewer that he was bouncing from place to place which is called 'couch surfing' . . . , would have any proof of residency from a place that he was never a resident at."

(Id. at 38-39)  Plaintiff also asserts in this letter that he "has been receiving services from [DHS], as a single adult male, since on or about the 12th day of March 2020. . . .  Thereby, due to [Plaintiff] being already [in receipt of] services from DHS and the fact that he is merely adding

Plaintiff resubmitted his housing application five times, but was repeatedly deemed ineligible for housing, "which only ended when Plaintiff initiated an Article 78 proceeding in New York State Supreme Court with a TRO [temporary restraining order]."  (Id.) Plaintiff asserts that "throughout the continued findings of ineligibility[,]" he was harassed and deprived of his constitutional rights by Defendants Daniel Reyes and Tatiana Cave.[4]  When Plaintiff told Reyes and Cave "that his constitutional rights were being violated" by the repeated findings of ineligibility, they "both told the plaintiff . . . that if 'he wanted to exercise his rights or follow the law then he should get his own house.'"  (Id. ¶ 24) (emphasis omitted)

Plaintiff was moved to a hotel located on West 42nd Street in New York City "[i]mmediately upon the lifting of the . . . TRO."[5]  Two days after arriving at the hotel, he was "administratively transferred" to an SUS facility located in the Bronx.  (Id. ¶¶ 28-31)

According to the Amended Complaint, since Plaintiff and his son arrived at the SUS facility on April 2, 2021, SUS employees have reported Plaintiff to the Administration for Children's Services ("ACS") thirty times for leaving his son alone in their assigned room, even when Plaintiff did so for short periods of time to go to the store, smoke a cigarette, or "take care of some business."  (Id. ¶¶ 15, 33)  Although ACS has consistently found that Plaintiff has done "nothing 'wrong'" – because Plaintiff's son is old enough to "remain alone, briefly, without supervision" – SUS employees have told Plaintiff that it is their policy that he must be with his

his minor child, . . . there should be no logical, lawful reason to deny aid to [Plaintiff]."  (Id. at 39)

[4]  While the Amended Complaint generally alleges that Reyes and Cave were employees of Acacia Network, it does not identify Plaintiff's relationship to Reyes and Cave or the roles in which they were serving when they caused the injuries alleged.

[5]  The Amended Complaint not otherwise disclose the outcome of Plaintiff's Article 78 proceeding or state when Plaintiff was moved to the West 42nd Street hotel.

son at all times or obtain "childcare."  According to Plaintiff, however, his son has "aged out" of eligibility for subsidized childcare.  (Id. ¶ 36.)

Plaintiff also alleges that SUS regularly locks Plaintiff out of his residence on weekends when Plaintiff's son visits his mother.  Defendants told Plaintiff that he is not "allowed into the building without [his son]," a policy that has forced Plaintiff to sleep outside on at least one occasion.  (Id. ¶¶ 39-42)  Defendants have refused to give Plaintiff's son a weekend "pass" to visit with his mother, and have said that they will only do so if there is a "court order[ed]" custody agreement.  (Id. ¶¶ 50, 57)  Plaintiff further claims that he contacted the police and tried to file a police report about these events, but the police officers who responded, Defendants Jane Doe Kong, John Doe Vicar, and Jane Doe Vasquez, would not allow him to submit a report.  (Id. ¶¶ 42-49)

Plaintiff asserts that his injuries are the result of the City's policy and practice of assigning operation of housing for homeless individuals to third party contractors "without any meaningful oversight to ensure that said contractors do not violate the rights of individuals residing in the residences."  (Id. ¶ 6)  He further asserts that when individuals living in such housing "complain or call 311, . . . [they are told] that, 'there is nothing that [the City] can do because it is the contractor's policy.'"  (Id.) (emphasis omitted)

Plaintiff asserts that Defendants have deprived him of his rights to due process and equal protection, and have deprived his son and his son's mother of their right to have visitation, in violation of the First, Fourth, Fifth, Sixth, Seventh, Thirteenth, and Fourteenth Amendments, the "Human Rights Treaty," and the Klu Klux Klan Acts of 1870 and 1871.  (Id. at 22-23)  Plaintiff seeks millions of dollars in damages, as well as an order "restrain[ing] defendants from further encroachment upon the 'Liberty' of plaintiff . . . [and] from the intimidation, cruel and unusual

treatment, deprivation of Liberty, threats, harassment, punitive actions, i.e., moving plaintiff from site

to site, discrimination, the unconstitutional criminalization of a 'protected class,' and the unlawful

seizure of property, 'under color of law.'" (<u>Id.</u> at 23-24) (emphasis omitted)

**B.     Procedural History**

On April 9, 2021, Plaintiff filed the Complaint, an application to proceed <u>in forma</u>

<u>pauperis</u> ("IFP"), and a proposed Order to Show Cause.  (Dkt. Nos. 1-3)  That same day, Judge

McMahon, to whom the case was then assigned, granted Plaintiff's IFP application.  (Dkt. No. 4)

On April 14, 2021, the case was reassigned to Chief Judge Swain.

On April 19, 2021, Chief Judge Swain denied Plaintiff's request for an Order to

Show Cause and granted Plaintiff leave to file an amended complaint.  (Dkt. No. 7)

On May 18, 2021, Plaintiff filed the Amended Complaint, along with a second

proposed Order to Show Cause seeking injunctive relief under Fed. R. Civ. P. 65.  (Dkt. Nos. 10-

12)

On July 12, 2021, the case was reassigned to this Court.

**<u>LEGAL STANDARDS</u>**

A Court must dismiss a <u>pro se</u> complaint, or portion thereof, that is frivolous or

malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); <u>see</u> <u>Livingston v.</u>

<u>Adirondack Beverage Co.</u>, 141 F.3d 434, 437 (2d Cir. 1998)  The Court must also dismiss a

complaint when the Court lacks subject matter jurisdiction.  <u>See</u> Fed. R. Civ. P. 12(h)(3).  While

the law authorizes dismissal on any of these grounds, district courts "remain obligated to

construe a <u>pro se</u> complaint liberally."  <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, <u>pro</u>

<u>se</u> complaints should be read with "special solicitude" and should be interpreted to raise the

5

"strongest [claims] that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations omitted).

## DISCUSSION

### A.     Claims Against New York City Police Department Defendants

Plaintiff alleges that Officers Vasquez, Kong, and Vicar violated his constitutional rights because they did not allow him to file a police report relating to his alleged mistreatment by SUS and its employees. (See Am. Cmplt. (Dkt. No. 10) ¶¶ 42-49, 59-89)

"[T]he Due Process Clauses [of the U.S. Constitution] generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989).[6] Moreover, "the allegation that a police officer refused to take police action is not a cognizable constitutional violation." Olabopo v. Gomes, No. 13CV5052RRMLB, 2016 WL 5477586, at *4 (E.D.N.Y. Sept. 29, 2016) (citing Matican, 524 F.3d at 155); see also Harris v. N.Y. Police Dep't at 421 Empire Blvd., No. 19CV7323AMDLB, 2020 WL 376579, at *1 (E.D.N.Y. Jan. 23, 2020)

---

[6] The Second Circuit has "recognized two exceptions to this general principle, rooted in the Supreme Court's analysis in DeShaney. First, the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim. . . . Second, the state may owe such an obligation if its agents 'in some way had assisted in creating or increasing the danger to the victim.'" Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008) (citing DeShaney, 489 U.S. at 196; Ying Jing Gan v. City of New York, 996 F.2d 522, 533 (2d Cir. 1993); Dwares v. City of New York, 985 F.2d 94, 98–99 (2d Cir. 1993), abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993)); see also id. (noting that under Second Circuit precedent, "involuntary custody [is] the linchpin of any special relationship exception") (citations omitted). Neither exception applies here. The Amended Complaint pleads no facts suggesting that a special relationship existed between Plaintiff and Officers Vasquez, Kong, and Vicar or that these officers created or increased any danger to Plaintiff.

("[P]olice officers have discretion to conduct investigations and initiate arrests, and are charged with acting for the benefit of the public, not private citizens.") (citation omitted); Lewis v. Gallivan, 315 F. Supp. 2d 313, 316-17 (W.D.N.Y. 2004) (holding that "[t]here is . . . no constitutional right to an investigation by government officials'" (quoting Stone v. Dep't of Investigation of N.Y., No. 91 Civ. 2471 (MBM), 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992))); Lewis v. N.Y.C. Police Dep't, No. 99 CIV. 0952 RWS, 2000 WL 16955, *4 (S.D.N.Y. Jan. 10, 2000) ("There is no constitutional right to force an officer to make an arrest.").

Here, although Plaintiff alleges that Officers Kong, Vicar, and Vasquez did not allow him to file a police report, their failure to do so is not a violation of Plaintiff's constitutional rights.  Accordingly, Plaintiff's claims against Defendants Jane Doe Kong, John Doe Vicar, and Jane Doe Vasquez will be dismissed.

**B.**    **Claims on Behalf of P.E.S. and P.E.S.'s Mother**

Plaintiff asserts that Defendants interfered with visitation between his minor child and the child's mother.

The statute governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself."  Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir. 1991) (internal quotation marks and citation omitted).  Generally, a non-attorney parent cannot bring an action on behalf of his or her minor child in federal court without counsel.  See Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005).  And "because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause.  A person must be litigating an interest personal to him."  Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) (citing Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir.

7

1997)); see also Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990) ("[I]t is not in the interests of minors . . . that they be represented by non-attorneys.").

Plaintiff has alleged no facts suggesting that he is an attorney.  Accordingly, to the extent the Amended Complaint asserts claims on behalf of Plaintiff's minor child or the child's mother, those claims will be dismissed.[7]

## C.    Order to Show Cause

Plaintiff seeks an order pursuant to Fed. R. Civ. P. 65 enjoining Defendants during the pendency of this action from "administratively transferring [him] without just cause" and prohibiting Defendants from imposing "unconstitutional rules/policies."  (See Dkt. No. 7)  In an affidavit submitted in support of his application, Plaintiff states that he was informed on May 16, 2021 "that he was being 'Administratively Transferred' and . . . staff refused to state a reason." (Pltf. Aff. (Dkt. No. 9) at 1)  He further asserts that although a "fair hearing" regarding the transfer was scheduled for May 19, 2021 at 10:30 a.m., he was notified on May 17, 2021 "that his 'Administrative Transfer' was taking place on the 19th day of May, 2021 . . . at the exact time of his scheduled 'fair hearing' before a judge."  (Id. at 2)  He "requests that the Court estop defendants from th[is] lawlessness[,] for plaintiff has over $300 worth of perishables in the freezer and the defendants are causing plaintiff and his minor child extreme mental anguish and emotional distress."  (Id.)

_____

[7]  By order dated April 19, 2021, Chief Judge Swain alerted Plaintiff that under Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, any reference to his minor child must be limited to the child's initials.  (See Dkt. No. 7)  In the Amended Complaint, however, Plaintiff again mentions the full name of his minor child.  The Court has asked the Clerk of Court to limit electronic access to Plaintiff's amended complaint to a "case-participant only" basis.  Plaintiff is reminded that going forward, he must refer to his minor child solely by his initials.

To obtain preliminary injunctive relief, Plaintiff must show: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." <u>UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.</u>, 660 F. 3d 643, 648 (2d Cir. 2011) (citations and internal quotation marks omitted); <u>see also</u> <u>Wright v. Giuliani</u>, 230 F.3d 543, 547 (2000) (same).  Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Moore v. Consol. Edison Co. of N.Y., Inc.</u>, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Having reviewed the allegations set forth in the Amended Complaint and Plaintiff's proposed Order to Show Cause and accompanying affidavit, the Court finds that at this stage, Plaintiff has not carried his heavy burden of showing that he will suffer irreparable harm if he is not awarded the extraordinary and drastic remedy of preliminary injunctive relief. Accordingly, the Court denies the motion without prejudice to renewal at a later stage.

**D.     <u>Order of Service</u>**

Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on the Court and the U.S. Marshals Service to effect service. <u>Walker v. Schult</u>, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); <u>see</u> <u>also</u> 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP)).  Although Rule 4(m) of the Federal Rules of Civil Procedure generally requires that the summons and complaint be served within 90 days of the date the complaint is filed, Plaintiff is proceeding IFP and could not have served summonses and the Amended Complaint until the Court reviewed the Amended Complaint and

ordered that summonses be issued.  The Court therefore extends the time to serve until 90 days after the date summonses are issued.

If the Amended Complaint is not served within that time, Plaintiff should request an extension of time for service.  See Meilleur v. Strong, 682 F.3d 56, 63 (2d Cir. 2012) (holding that it is the plaintiff's responsibility to request an extension of time for service); see also Murray v. Pataki, 378 F. App'x 50, 52 (2d Cir. 2010) ("As long as the [plaintiff proceeding IFP] provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m).").  If service has not been made within 90 days from the date the summons is issued, and if Plaintiff has not requested an extension of time to serve within that 90 days, **this action may be dismissed** pursuant to Rules 4 and 41 of the Federal Rules of Civil Procedure.

To allow Plaintiff to effect service on Defendants City of New York, Acacia Network, Services for the Underserved, Daniel Reyes, Tatiana Cave, Donnell Burt, and Joel Barton through the U.S. Marshals Service, the Clerk of Court is instructed to fill out a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for each of these defendants.  The Clerk of Court is further instructed to issue summonses and deliver to the Marshals Service all the paperwork necessary for the Marshals Service to effect service upon the defendants.

Plaintiff must notify the Court in writing if his address changes.  Failure to do so **may result in dismissal of this action**.  Plaintiff is advised that the Pro Se Office at the United States Courthouse, 500 Pearl Street, Room 230, New York, New York 10007, telephone: (212) 805-0175, may be of assistance in connection with court procedures.

10

**E.**     **Unidentified Defendants**

Under Valentin v. Dinkins, a pro se litigant is entitled to assistance from the district court in identifying a defendant.  See 121 F.3d 72, 76 (2d Cir. 1997).  In the Amended Complaint, Plaintiff supplies sufficient information to permit Defendant SUS to identify employees Jane Doe Martine, Jane Doe Baptiste, Jane Doe Facility Manager, and Jane Doe Simmons.  It is therefore ordered that SUS ascertain the identities of each Doe whom Plaintiff seeks to sue and the address where they may be served.  SUS must provide this information to Plaintiff and the Court within sixty days of the date of this order.

Within thirty days of receiving this information, the Court will issue an order directing the Clerk of Court to complete the USM-285 forms with the addresses for the named Doe Defendants and deliver all documents necessary to effect service to the U.S. Marshals Service.

## CONCLUSION

Plaintiff's claims against Police Officer Vasquez, Jane Doe Kong, and John Doe Vicar are dismissed.  See 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff's claims on behalf of his son and his son's mother are also dismissed.  See id.

Plaintiff's request for issuance of an order to show cause is denied without prejudice.  (Dkt. No. 11)

The Clerk of Court is instructed to complete the USM-285 forms with the addresses for the City of New York, Acacia Network, Services for the Underserved, Daniel Reyes, Tatiana Cave, Donnell Burt, and Joel Barton and deliver all documents necessary to effect service to the U.S. Marshals Service.

The Clerk of Court is further directed to transmit this order to Plaintiff, together with an information package.[8]

The Clerk of Court is further instructed to mail a copy of this order to Services for the Underserved at 463 7th Avenue, 17th Floor, New York, N.Y. 10018.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   September 9, 2021
         New York, New York

_____
PAUL G. GARDEPHE
United States District Judge

---

[8] Plaintiff has consented to receive electronic service.  (See Dkt. No. 5)

## DEFENDANTS AND SERVICE ADDRESSES

1.   City of New York
     100 Church Street
     New York, N.Y. 10007

2.   Acacia Network
     300 East 175th Street
     Bronx, N.Y. 10457

3.   Services for the Underserved
     463 7th Avenue, 17th Floor
     New York, N.Y. 10018

4.   Daniel Reyes
     Acacia Network
     300 East 175th Street
     Bronx, N.Y. 10457

5.   Tatiana Cave
     Acacia Network
     300 East 175th Street
     Bronx, N.Y. 10457

6.   Donnell Burt
     Services for the Underserved
     463 7th Avenue, 17th Floor
     New York, N.Y. 10018

7.   Joel Barton
     Services for the Underserved
     463 7th Avenue, 17th Floor
     New York, N.Y. 10018